## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DOUGLAS H. DUNSIZER,

       Petitioner,

v.                                     CASE NO:  8:04-CV-99-T-30TBM

JAMES V. CROSBY, JR., Secretary,
Department of Corrections,

       Respondent(s).

_____/

## ORDER

Douglas Dunsizer ("Petitioner" or "Dunsizer") brings this petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 (Dkt. #1).  The Court has considered the petition, Respondent's response (Dkt. #7) and Petitioner's reply (Dkt. #10).  Upon review, the Court determines that the petition must be denied because it fails to meet the requirements of 28 U.S.C. §2254(d) and (e).

## BACKGROUND

Petitioner was found guilty in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, of (1) attempted murder in the first degree, (2) shooting at, within or into a building, and (3) aggravated assault.  He subsequently pled guilty to (4) felonious possession of a firearm.

These charges arose out of the events occurring during the evening and early morning hours of August 17 and 18, 1995, at the Evergreen Tavern.[1]  Dunsizer performed certain managerial duties at the tavern which was owned by his mother.  He had hired Heidi Klem ("Klem") to work as a bartender approximately a month and a half prior to the events in question.

On the night of August 17, 1995, Dunsizer first arrived at the bar around 8:30 p.m.. He had been drinking.  After a short time he left, and returned again at about 10:30 p.m.  He appeared to have had more to drink, but was not falling down drunk.  Dunsizer attempted to check the cash register but could not get it to open.  He then picked up the cash register, threw it to the ground, took out a gun and shot the cash register.  Patty Kowalski ("Kowalski"), Dunsizer's girlfriend, picked up the damaged cash register and took it to the back room of the bar.  Dunsizer went back to drinking with the patrons in the bar including Joe Adams ("Adams"), the eventual victim.

Approximately three or four hours later, at about 2:00 a.m., Klem announced that it was closing time and asked everyone to leave.  Adams wanted to continue partying.  She had to ask him four or five times to leave and finally Dunsizer pushed him out the door.  The two began to argue in the parking lot outside the tavern and even got into a physical altercation, wrestling around on the ground.  After a brief struggle, Adams walked out to the street, off the bar premises, turned and said to Dunsizer, "I'm not on your property anymore.  You can't

---

[1] The factual background is taken from the fact section of Petitioner's first appellate brief to the Second District Court of Appeal (Ex. 4) and the testimony of Heidi Klem at trial (Ex. 24, Vol. IV, pp. 518 *et seq.*).

do anything to me." At that, Dunsizer ran back inside the bar asking for his gun. (After the cash register shooting incident, one of the bar patrons had hidden the gun in the back of Dunsizer's truck.) According to Klem, he appeared upset and in a loud tone of voice asked, "Where is my gun? Where is my fucking gun?" (Transcript, Vol. IV, page 532). Klem told Dunsizer where his gun was and he told everybody to stay inside. Dunsizer then went out to his truck, jumped in the back, and then started running north in the direction taken by Adams. Klem then closed the door, walked to the bar, and heard a gunshot. Two minutes later, Dunsizer returned. Klem and Kowalski were trying to leave because they were scared. As they were trying to get into Klem's truck to leave, Dunsizer grabbed Kowalski, held a gun to her and said, "Bitch. You'll be next." (Transcript, Vol. IV, page 535).

Subsequent to his trial and conviction, Dunsizer appealed to the Second District Court of Appeal and raised the following three (3) issues:

1.     The trial court committed legal error by failing to suppress the evidence obtained in an illegal search in violation of the Fourth Amendment of the U. S. Constitution.

2.     Doug was denied his right to a fair trial due to prosecutorial misconduct.

3.     The cumulative effect of the trial court rulings reflect that the trial court failed to grant Doug a fair trial.

The Second District Court of Appeal affirmed *per curiam*. Dunsizer v. State, 746 So.2d 1093 (Fla. 2d DCA 1999). Petitioner filed a Rule 3.850 motion for post-conviction relief asserting the following grounds:

1.      Defense counsel failed to timely object to inappropriate comments made by the prosecuting attorney.

2.      Defense counsel was ineffective due to the failure to attack the inaccuracy present in the search warrant used to search the Defendant's bedroom.

3.      Defense counsel was ineffective for failing to object to the scoresheet prepared by the prosecutor.

4.      Defense counsel was ineffective for failing to advise the Defendant as to the ramifications of the plea to burglary and to the possession of a firearm charge.

5.      Defense counsel was ineffective for failing to contact witnesses which may have helped Defendant's case.

6.      Co-counsel erroneously failed to inform Defendant as to the appropriate sentencing provisions the Defendant would serve in prison, thereby inducing Defendant to enter a plea.

The trial court granted an evidentiary hearing as to claim five and summarily denied the remaining claims.  (See Exhibit 11).  After conducting the hearing, the trial court filed its Order Denying Petitioner's Remaining Claim for Post-Conviction Relief denying claim five.  (Exhibit 15).  Petitioner appealed and again the Second District Court of Appeal affirmed the trial court *per curiam*.  <u>Dunsizer v. State</u>, 856 So.2d 990 (Fla. 2d DCA 2003).

Petitioner now seeks habeas relief from this Court asserting the following fifteen claims:

**<u>One</u>**:      The trial court committed legal error by failing to suppress the evidence obtained from an illegal search in violation of the Fourth Amendment of the United States Constitution.

**<u>Two:</u>**      The prosecutor committed prosecutorial misconduct during jury selection.

**Three:**     The prosecutor committed prosecutorial misconduct during the trial.

**Four:**      The prosecutor committed prosecutorial misconduct during closing argument.

**Five:**      The trial court committed error by refusing to allow Petitioner to present material evidence of witness bias.

**Six:**       The trial court committed error by refusing to allow Petitioner to present material evidence of the victim's history of violence.

**Seven:**     The trial court committed error by admitting into evidence, over defense objection, overly prejudicial photographs of Petitioner's heavily tattooed back.

**Eight:**     The trial court committed error by refusing to grant a mistrial on the basis of a discovery violation

**Nine:**      The trial court committed error in sentencing by improperly admitting evidence of Defendant's prior convictions.

**Ten:**       Defendant's trial counsel was ineffective during trial for failing to make objections to improper statements by the prosecutor.

**Eleven:**    Defense counsel was ineffective prior to trial by failing to raise two facial inaccuracies in his motion to suppress the search warrant.

**Twelve:**    Defense counsel was ineffective at sentencing for failing to object to the state's introduction into evidence of Defendant's prior convictions without providing certified copies of each conviction.

**Thirteen:**  Defense counsel was ineffective at sentencing for failing to advise Petitioner as to the minimum penalty for the 1996 burglary with an assault offense.

**Fourteen:**   Defense counsel was ineffective at sentencing for failing to inform the Defendant that he must serve 85% of his imposed sentence for the 1996 convictions instead of 65% of his current sentence for the 1995 convictions.

**Fifteen:**   Defense counsel was ineffective at trial for not pursuing an alibi defense.

## SECTION 2254 THRESHOLD

Since Petitioner's conviction was entered after the enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), his petition is subject to the provisions thereof.  When a federal court is asked to review a criminal conviction from state court, 28 U.S.C. §2254 places a heavy burden upon the petitioner.  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim resulted in a decision that:

(1)   was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or

(2)   was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362 (2000).

In Williams v. Taylor, 529 U.S. 362, the Supreme Court held:

Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case.

Additionally, federal habeas relief is available under the "unreasonable application" standard only if the state court's application of clearly established federal law was "objectively unreasonable." Parker v. Head, 244 F.3d 831, 835 (11th Cir. 2001).

In a proceeding under the second standard (an unreasonable determination of the facts), a state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1). This statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. McBride v. Sharpe, 25 F.3d 962, 971 (11th Cir. 1994).

Several of Petitioner's claims concern ineffective assistance of counsel. According to clearly established federal law enunciated by the United States Supreme Court, to establish a *prima facie* claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. Strickland, 466 U.S. at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Both prongs (deficient performance and prejudice) must be shown before a petitioner is entitled to habeas relief. The Eleventh Circuit has held that when applying Strickland, a federal district court may dispose of ineffectiveness claims on either of the two

prongs without the necessity of discussing the other.  Oats v. Singletary, 141 F.3d 1018 (11th Cir. 1998).

## EVIDENTIARY HEARING

When the petition concerns state court proceedings, the factual basis necessary to support a claim for habeas relief in this Court must be developed in the record of state court proceedings, except under very limited circumstances.  See Breard v. Greene, 523 U.S. 371, 376 (1998).  The provisions of the AEDPA governing evidentiary hearings in federal habeas corpus cases are found at 28 U.S.C. §2254(e)(2), which states:

> If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> A.    the claim relies on (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> B.    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Consistent with the AEDPA goal of streamlining the habeas process, this provision "expressly limits the extent to which hearings are permissible, not merely the extent to which they are required."  Kelley v. Sec., Dep't of Corr., 377 F.3d 1317, 1337 (11th Cir. 2004), *cert. denied*, ___ U.S. ___, 125 S.Ct. 2962 (Jun. 27, 2005).

Even if a petitioner convinces the district court that he diligently sought to develop the factual basis of a claim for habeas relief but was denied the opportunity to do so by the

state court, the petitioner must still persuade the district court that the facts supporting the claims for which the evidentiary hearing is requested "would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found [the petitioner] guilty of the underlying offense."   28 U.S.C. §2254(e)(2)(B).

Petitioner does not meet either of the exceptions in 28 U.S.C. §2254(e)(2).  Therefore, he is not entitled to an evidentiary hearing in this Court.  All facts relevant to his claim must be taken, to the extent they exist, from the state court record.

## **DISCUSSION**

### **Claim One**

**The trial court committed legal error by failing to suppress the evidence obtained in an illegal search in violation of the Fourth Amendment of the U. S. Constitution.**

Petitioner argues that his Fourth Amendment rights were violated when the police officers searched his room without consent.  This claim, raised at the trial level in a motion to suppress, was heard and denied by the state court.  Petitioner raised this claim in his appeal to the state appellate court and it was denied.  He is now barred from raising the same claim in the federal courts.  Stone v. Powell, 428 U.S. 465 (1976).

The Supreme Court, in Stone, held that federal courts are precluded from conducting post-conviction review of Fourth Amendment claims where state courts have provided "an opportunity for full and fair litigation" of those claims.  428 U.S. 465, 494 (1976).  As long as a defendant has had the opportunity to present Fourth Amendment claims to the state trial

and appellate courts, the objectives of the exclusionary rule have been satisfied.

Therefore, claim one must be denied.

## Claim Two

**The prosecutor committed prosecutorial misconduct during jury selection.**

In support of this claim, Petitioner argues that the prosecutor committed misconduct

by making the following two statements to prospective jurors during voir dire:

(1)     "This chair, the chair next to me, is the people of the state of Florida, and the Constitution that our children fought and died for . . ." (Citing Exhibit 24, volume 3, T-145-146), and

(2)     "The purpose of objecting is to keep information from you." (Citing Exhibit 24, volume 3, T-146-147).

The Court first turns to the record to determine whether the statements were actually made

and, if so, the context in which they were made, and then must determine whether the

comments so infected the trial with unfairness that any resulting conviction would be a denial

of due process.  Tucker v. Kemp, 802 F.2d 1293 (11th Cir. 1986).

The record shows that the prosecutor made the first statement.  The context of the

statement begins on page 145 of the trial transcript:

Prosecutor (about halfway through a lengthy comment):

Now, the second part of this is, it's a tough job, folks.  We understand that. It's a tough job for you-all to sit up here as a jury.  We're not expecting anybody to think this is easy.  You may laugh at times during the course of the trial.  It's a very serious situation for the defendant, for the state of Florida and for everybody.

So can you all promise that this is an important day, and you will give it it's due regard?  You don't think you can do it, that's fine.  That's what this

country is all about.

Okay.  So you feel you can feel impartial as a juror?

Okay.  Now, I understand you probably think I'm nuts right now, but the reason I talk about this stuff, the burden of proof and all this kind of stuff, is I want you to remember the flip side of the coin:  This chair, the chair next to me, is the people of the state of Florida, and the constitution that our children fought and died for - -

                    . . . (objection omitted) . . .

Prosecutor:   Our constitution guarantees our defendant, the defendant the right to a fair trial.  Can you all promise to give the state of Florida the same fair trial you promised to give the defendant?

Prospective jurors:   Yes.

Prosecutor:   It's not - - it's the people of the state of Florida that have alleged that man over there committed a crime.  Do you all understand that?

Prospective jurors:   Yes.

Prosecutor:   Ms. Crowell, you're going - - during the course of this trial, there had been objections, like you've seen us go up to the bench.  I believe it's necessary for other situations.

              You don't feel that we're trying to hide anything?

              Anybody feel that way?  If we go - -

Prospective jurors:   No.

Prosecutor:   Understand that it's the lawyers job?

Defense attorney:    Judge, can we approach?

(Conference at bench)

| | |
|---|---|
| Defense attorney: | Number one, on the previous one, we'll ask for a mistrial. And I'm sure you're going to deny that. |
| The Court: | Yes, I'll deny the motion. |
| Defense attorney: | Two, I'm going to object on "the purpose of objecting is to keep information from you." That is improper. That is - - and he's already cast a blame, in the openings, to keep information from the jury. |
| Prosecutor: | I said "both sides." |
| Defense attorney: | We're talking about keeping information from the jury. It's improper, and that's grounds for a mistrial, and I ask for it. |
| The Court: | Motion for mistrial is overruled (sic). |

(End of bench conference)

The first statement was made in the context of asking the jurors if they could be impartial and give both sides a fair trial. The prosecutor appeared to be trying to convey the notion that the constitution demands a fair trial for the defendant and a fair trial for the government. It is not inappropriate for either party to impress upon jurors that their duty is a serious one and has constitutional implications. While it may have been inadvisable for the prosecutor to make reference to "the constitution that our children fought and died for" (as well as being factually and logically difficult to follow), such references certainly do not so infect the trial with unfairness as to impact the result. It did not make the resulting conviction a denial of due process.

The second statement ("the purpose of objecting is to keep information from you,") was actually made by the defense lawyer in his argument to the judge during a sidebar conference. It was not made (1) to the prospective jurors (2) by the prosecutor as claimed by Petitioner. In making the statement, the defense lawyer was making an objection to a question asked by the prosecutor, and the defense attorney misstated the question. The question was, "You don't feel that we're trying to hide anything?" which is an entirely appropriate question.[2]

Claim two has no merit and is denied.

## Claim Three

**The prosecutor committed prosecutorial misconduct during the trial.**

In support of claim three, Petitioner asserts the prosecutor committed misconduct during the trial by making the following two statements:

1)      "Hey, Doug, ice cream has no bones," and

2)      "A partridge in a pear tree."

Additionally, Petitioner makes the following general and conclusory arguments:

> It is well settled that a prosecutor can and should perform his job with excellence and passion but he cannot and must not cross a line towards unethical behavior. Berger v. United States, 295 U.S. 78 (1935). In the instant case, taken as a single statement or, more significantly, as a whole, the prosecutor's comments were so egregious as to render Petitioner's trial fundamentally unfair. Hance v. Zant, 696 F.2d 940, 950 (11th Cir. 1983) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed. 2d 431 (1974)).

---

[2] The Court questions whether Petitioner's counsel made this claim in good faith.

As to the first alleged statement, counsel is factually incorrect and has misstated the record.  The comment was not made to the jurors, it was part of a question to Heidi Klem, the bartender who had observed the events in question.  The defense was operating on a theory of intoxication and had questioned Ms. Klem closely trying to establish that Mr. Dunsizer was intoxicated at the time of the shooting.  In response, the state was trying to establish that Mr. Dunsizer was still in control of his mental faculties such that he understood what was going on.  The statement about which Petitioner complains was made by the prosecutor in the following context:

Q:      How long have you worked as a bartender?

A:      At the Evergreen?

Q.      Just the Evergreen.

A.      A month and a half.

Q.      Do you drink, yourself?

A.      I may have had two or three beers throughout the night.

Q.      Were you impaired by alcohol in any way, shape or form?

A.      No.

Q.      Have you had occasion to see people under the influence of alcohol in the past?

A.      Yes.

Q.      On more than one occasion?

A.      Correct.

Q.     Have you seen the defendant consume alcohol in the past?

A.     Yes.

. . .

Q.     Have you seen the defendant affected by alcohol?

A.     Yes.

. . .

Q.     During the course of this evening, did you have direct contact with the defendant?

A.     Contact?  Speak to?

Q.     Speak to; talk with; speak to?

A.     Yes.

Q.     Did he appear to understand what you said to him?

A.     Just everything that - -

Q.     In general?

. . .

Q.     In other words, Heidi - - and I understand your mind is on overload, just like our court reporter's machine - - were there occasions where you asked Doug questions, "Hey, Doug, ice cream has no bones."  Okay?  Was that the kind of thing was he able to relate to?  A conversation to me is - -

Mr. Carver:    Objection.

The Court:     Overruled.

A.     We talked throughout the night.

Q.     Did he have conversations with you that made sense?

A.      Yes.

(Volume 4, trial transcript, pages 55-59).

Second, Petitioner's counsel offers nothing in support of his general conclusory statement that this comment constituted "unethical behavior."  While the question may appear to be a strange way to couch a question to a witness as to whether someone was mentally coherent, it is certainly not unethical.  Given the context, it was perfectly appropriate.

Petitioner asserts an additional comment by the prosecutor during the trial, to wit: "A partridge in a pear tree."  The Petition fails to identify when the statement was made or to whom.  The Court is under no obligation to search through the record to find support for a claim made by Petitioner.  In its response, the government points out that the statement was made during a discussion with the court, outside the presence of the jury.  Petitioner's reply does not take issue with this fact.  Obviously, a statement made outside the presence of the jury would have no effect on the jury's verdict.  This contention, if not abandoned by Petitioner, has no merit.

For these reasons, claim three will be denied.

## **Claim Four**

**The prosecutor committed prosecutorial misconduct during closing argument.**

In support of claim four, Petitioner argues that, during closing argument, the prosecutor lowered himself to his knees and acted out the shooting as if it were an execution

style crime. Petitioner contends that the record bears no factual support for such a dramatic scene and points out that the victim himself testified that he was walking down the street, heard his name called, turned to look, and was immediately shot. Interestingly, the trial transcript has no indication that the prosecutor went to his knees during closing arguments. There is a reference made by defense counsel in the motion for new trial (Volume 1, R 85), but defense counsel's argument is the only indication in the record. The trial court's order denying the motion for new trial makes no mention of that conduct. (Volume 1, R 92).[3]

Assuming arguendo that such conduct did occur, this Court must look to the context of the situation and determine whether it rendered the trial fundamentally unfair. A prosecutor's argument renders a trial unfair if "there is a reasonable probability that (the remarks) changed (the) outcome of the case." See Baxter v. Thomas, 45 F.3d 1501, 1515 n.15 (11th Cir. 1995).

Turning to the context, the behavior allegedly occurred while the prosecutor was making an argument based on the angle of entry of the bullet. After pointing out that Joseph Adams (the victim) was six feet two and that the Defendant was something less than six feet in height, he argued as follows:

> It's important to remember bullets travel straight. And the doctor told you, as did Eric Smith, that the entry was to the left side of the neck and going down. And ultimately ended up back in the lower back, kind of like the shoulder blade. So it was going down from the forward to the back, left to right. . . . But how do we find Joseph Adams? He was found, if you recall – and I don't

---

[3] While the prosecutor was making his argument, there was no contemporaneous objection from defense counsel. The absence of a contemporaneous objection is persuasive that trial counsel did not perceive the need for one at the time. Wainewright v. Witt, 469 U.S. 412, 437 n.4 (1985) (Stephens, J. concurring).

know that I'm going to be better than certainly all – Can you all see me? Joseph Adams was laying on his back like this, with his legs tucked up underneath him.  And the entry wound to his neck was going down, left to right, to the back.

Well, assume for a moment that Mr. Dunsizer wasn't standing on a ladder, and assume for a moment.  That he held a gun somewhere about here (indicating.) Mr. Adams had to be below that point when he was shot.  That's common sense.  That's basically what your common sense would tell you.  The bullet is going down, he's got to be below him.

I suggest to you that the evidence, the physical evidence at the scene, the condition of Mr. Adams, the trajectory of the bullet into him tells us one thing, and that tells us that Joseph Adams was on his knees, begging for his life when that man, right there, took this gun and decided to end it.  Cause the legs are underneath him.  If you assume that Joseph Adams saw him coming and he went to lunge for him so that the angle is down, how do his legs get tucked up all the way underneath him?  Joseph Adams was almost executed.  Why he was almost executed, I still don't know, and probably never will.

(Volume V, trial transcript, pp. 672-673).

Counsel are allowed to make arguments based on facts in evidence.  It need not be consistent with the testimony of any individual witness as long as there are facts in the record to support it.  This was appropriate argument based on the angle of bullet entry.

Reviewing the alleged actions of the prosecutor in the context of the argument and the trial as a whole, it cannot be said that it made the trial fundamentally unfair.  Branch v. Estelle, 631 F.2d 1229 (5th Cir. 1980).[4]  This is especially so given the weight of the other evidence in this case.

---

[4] See Bonner v. City of Prichard, 661 F.2d 1318 (11th Cir. 1981) (*en banc*) (adopting as precedent for the Eleventh Circuit all decisions of the former Fifth Circuit issued before October 1, 1981).

Since the conduct in question did not render the trial, taken as a whole, fundamentally unfair, this claim will be denied.

### Claim Five

**The trial court committed error by refusing to allow Petitioner to present material evidence of witness bias.**

In support of claim five, Petitioner argues that the trial court erred by not allowing his attorney to cross examine Patty Kowalski, Petitioner's former girlfriend, about her violation of probation which occurred shortly after the shooting.  Kowalski received no jail time and no fine from her violation of probation.  Further, Petitioner asserts that the trial court erred in not allowing cross examination about Kowalski keeping the $1,000 that Petitioner had posted to bond her out of jail.

The intended cross examination was proffered outside the hearing of the jury.  (Ex. 24, Vol. IV, pp. 494 *et seq*.).  Had the cross examination been allowed, Kowalski would have testified that at the time of the shooting she was on probation for possession and sale of cocaine.  Adjudication had been withheld in that case.  Two months after the shooting, in November of 1995, she had a "dirty urine" and her probation was violated.  At her violation hearing, her probation was extended nine months.  She said she was promised nothing by the state and received no benefits by testifying in Dunsizer's case.  She had put up her own $1,000 for her bond which was returned to her.  It appeared from the record that Petitioner's counsel had a receipt or receipts from which he thought he could impeach Kowalski about the source of the $1,000.  The trial court had heard argument prior to trial on a motion in

Page 19 of  35

limine and had granted the motion and excluded all of this evidence.

A trial court has wide discretion in determining what evidence should be allowed before the jury.  Any errors in that regard can be appealed in state court.  Petitioner did in fact appeal to the state appellate court the trial court's exclusion of this cross examination evidence and the appellate court denied the appeal.

This Court does not sit as a super appellate court concerning evidentiary rulings of a state trial court.  In a habeas petition, a federal court is only concerned with whether a limitation on the introduction of evidence offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  Montana v. Egelhoff, 518 U.S. 37 (1996).  It is the Petitioner's burden to show that the principle of procedure violated during the trial (and allegedly required by due process) is fundamental. Petitioner here has not met that burden.  First, the trial court was well within its discretion to not allow cross examination on collateral acts, and second, the exclusion was not harmful. Kowalski's testimony was essentially the same as Klem's.  Had the trial court allowed the proffered cross examination, it would not have changed the outcome of the trial.

The confrontation clause of the Constitution guarantees one's right to cross examine a witness against him.  It does not guarantee a right to ask any and all questions.  United States v. Schardar, 850 F.2d 1457 (11th Cir. 1988) (no abuse of discretion in district court's precluding defendant from testifying that a government witness had offered to smoke opium and marijuana with him), cert. denied, 488 U.S. 932 (1988).

For the reasons stated, claim five has no merit and must be denied.

## Claim Six

**The trial court committed error by refusing to allow Petitioner to present material evidence of the victim's history of violence.**

In support of claim six, Petitioner argues that the trial court erred in refusing to allow evidence of the victim's record as a convicted felon and his documented acts of domestic violence. This claim was raised on direct appeal and the state appellate court affirmed the state trial court's ruling excluding this evidence on cross examination. Once again, this Court does not sit as a super appellate court to analyze each and every evidentiary ruling of a state trial court. That is not the proper function of this Court. For all the reasons set forth in this Court's opinion as to claim five, claim six likewise has no merit and must be denied.

## Claim Seven

**The trial court committed error by admitting into evidence, over defense objection, overly prejudicial photographs of Petitioner's heavily tattooed back.**

In support of claim seven, Petitioner argues that there is no probative value to the pictures and it was overly prejudicial to allow evidence of Petitioner's membership in a violent biker gang. Petitioner contends that the stereotypical image of a violent, lawless and generally bad group of men outweighs the little, if any, relevant probative value the pictures may have had.

Actually, Petitioner confuses two separate issues in this claim. It is not the photographs themselves that convey the information he claims to be overly prejudicial. That information was the testimony of the witness who testified that he was a member of the

Southern Calvary motorcycle gang.  The photographs of the tattoos merely show tattoos that link him to that particular motorcycle gang.  This information was relevant to the witness tampering charge.  Kowalski stated that Petitioner threatened to have seven or eight people hunt her down and kill her if she testified.  These people, like Dunsizer, were members of the Southern Calvary motorcycle gang.  (Ex. 24, Vol. V, p. 477).

The admission of the photographs into evidence were well within the wide discretion of the trial court judge.  They did not render the trial fundamentally unfair.  For the reasons given in denying claim five above, this Court finds claim seven to be without merit and it must be denied as well.

## <u>Claim Eight</u>

### The trial court committed error by refusing to grant a mistrial on the basis of a discovery violation

In support of claim eight, Petitioner argues that the photographs of Petitioner's tattooed back had not been produced during discovery and the trial court should have granted Petitioner's motion for mistrial when they were admitted into evidence.  Having determined that the photographs were within the discretion of the trial court to admit into evidence and having further determined that such admission did not render the trial fundamentally unfair, this claim is without merit and must be denied.

## Claim Nine

**The trial court committed error in sentencing by improperly admitting evidence of Defendant's prior convictions.**

In support of claim nine, Petitioner argues the trial court committed error because it admitted into evidence copies of the Defendant's prior convictions, not certified copies. Petitioner does not contend that the copies were inaccurate or did not properly set forth his criminal history. He then argues that these prior convictions resulted in the Petitioner being sentenced to additional prison time.

At the state level, Petitioner did not argue that this evidentiary issue amounted to a deprivation of his U. S. constitutional rights. Therefore, this issue is procedurally defaulted and Petitioner is barred from raising it here. Even if the claim were allowed to be raised in this habeas petition, it would still fail. Once again, this is an evidentiary issue and Petitioner has not shown it to render his sentence fundamentally unfair. Had his sentence exceeded the statutory maximum (which Petitioner does not contend), that could rise to the level of a violation of the Eighth Amendment prohibition against cruel and unusual punishment. Ford v. Moore, 296 F.3d 1035 (11th Cir. 2002). A sentence within the statutory range does not rise to this level and is for state appellate review.

The Court notes that the government takes issue with the Petitioner's version of the underlying facts. The government asserts that the court was given certified copies of Dunsizer's grand theft and robbery offenses at the change of plea/sentencing hearing held

on December 5, 1996.  Further, the government points out that the trial court found that

certified copies of the burglary and fourteen misdemeanor offenses were unnecessary

because the sentence given was the result of the Defendant's plea agreement.  The state court

explained it as follows:

> The "guidelines" sentence on count one, however, was a 40 year aggravated departure sentence, and it is abundantly clear fro the record that this 40 year sentence was agreed upon by all parties before the Court determined it to be a "guidelines" sentence.
>
> * * *
>
> It is clear, then that the sentence on count one - - which was technically an aggravated departure from the recommended sentence under the guidelines - - was contemplated without reference to the guidelines; it was essentially a plea agreement even though Defendant proceeded to trial on most of the counts in CRC95-13533CFANO.  Consequently, any error as to the inclusion of the burglary conviction or the 14 misdemeanor offenses - - which Defendant did not object to at the time of sentencing - - is harmless.  See Skidmore v. State, 688 S.2d 1014 (Fla. 3d DCA 1997); Russell v. State, 656 So.2d 203 (Fla. 5th DCA 1995); Boerstler v. State, 622 So.2d 184 (Fla. 1st DCA 1993).  Because it is without question, after reviewing the change of plea/sentencing hearing in its entirety, that Defendant would have still received the 40 year sentence on count one even if these prior record offenses had not been included on the scoresheet.  Defendant is not entitled to any relief on this claim.  The Court finds the record to be conclusive in this respect.  See Carter v. State, 705 So.2d 582 (Fla. 2d DCA 1997); Mohn v. State, 723 So.2d 873 (Fla. 2d DCA 1998).  As such, assuming without deciding that trial counsel was deficient in failing to object to the inclusion of these prior record offenses, Defendant has failed to show how he was prejudiced by this harmless error.

(Ex. 23, Vol. II, r. 201).

For these reasons, claim nine has no merit and must be denied.

## Claim Ten

**Defendant's trial counsel was ineffective during trial for failing to make objections to improper statements by the prosecutor.**

In support of claim ten, Petitioner argues that his trial counsel were ineffective because they failed to object to the prosecutor's "personal attacks on the Petitioner" during trial. Petitioner contends the prosecutor made the following personal attacks: "Hey, Doug, ice cream has no bones," and "partridge in a pear tree."

These are the same comments that formed the grounds to claim three. First, the comments were not attacks on the Petitioner. Second, they were not improper. Therefore, this claim has no merit and is denied.

## Claim Eleven

**Defense counsel was ineffective prior to trial by failing to raise two facial inaccuracies in his motion to suppress the search warrant.**

In support of claim eleven, Petitioner argues that trial counsel was ineffective for failing to include in his motion to suppress the search warrant that the affidavit in support was inaccurate in two respects: 1) it stated Petitioner's "apartment" was in the city of Seminole, Florida, when in fact it was in St. Petersburg, Florida, and 2) it stated that the cries of the victim of the shooting could be heard in the area of the business known as General Appliances, when the correct name of the business was Capitol Appliances.

This claim fails both the deficiency and the prejudice prongs of the Strickland test. The errors are so minor that they would have had no effect on the outcome of the effort to

suppress the search warrant in this case.  The trial court explained it well in its order denying

post-conviction relief (Exhibit 15) by stating:

> Here, the State argues, in its response, that this claim is without merit.  The
> Court agrees.  With regard to the first inaccuracy - - that the warrant listed
> Defendant's apartment residence as being located in Seminole when Defendant
> contends the apartment residence is actually located in St. Petersburg - - the
> State points out that the residence, located at 4820 Seminole Boulevard, is
> "barely outside the city of Seminole in the unincorporated Pinellas County
> area."  The State attaches a color-coded map in support.  The Court finds this
> error to be inconsequential in light of the detailed description of the property
> that was accurately described in the affidavit, which reads, in pertinent part:

> . . . located at the southwest corner of Seminole Boulevard and 49th avenue,
> which is beige in color with brown and white trim and a grey shingled roof,
> located on the south side of the residence facing east are two white overhead
> garage doors with the number 4820 in black between said garage doors, on the
> northeast corner of the property the yard consists of brown pebble stone and
> in the center of this area is a large concrete fish, on the north end of the house
> is a three car white aluminum carport. . .

> Clearly, the description set forth above was sufficient to lead the searcher to
> the apartment  residence to the exclusion of other residences, and enabled the
> searcher to identify the place to be searched. [ ] Additionally, the second
> alleged inaccuracy - - that the cries were heard coming from General
> Appliances rather than the actual business named Capitol Appliances - - is
> again, inconsequential in light of the fact that the appliance store was not the
> subject of the search, the affidavit listed the street address of the store, and the
> name itself reflected the type of business (i.e. appliance store).

> As such, it cannot be said that trial counsel - - who did file a motion to
> suppress, but did not list the two inaccuracies above in the motion - - was
> deficient in failing to bring to light these deficiencies. Evaluation of an
> attorney's performance at the trial level requires a consideration of all the
> circumstances from the attorney's perspective at the time of trial - - it is
> apparent that here, trial counsel predicated his motion to suppress on more
> "substantial" grounds.   The legal standard for such an evaluation is
> "reasonably effective counsel, not perfect or error-free counsel."

This Court agrees with the state trial court and determines that counsel's performance was neither deficient nor prejudicial, and therefore, claim eleven is denied.

## Claim Twelve

**Defense counsel was ineffective at sentencing for failing to object to the state's introduction into evidence of Defendant's prior convictions without providing certified copies of each conviction.**

Petitioner supports claim twelve by arguing that defense counsel did not object to the use of copies at sentencing.  He contends that the "introduction of these prior convictions resulted in the Petitioner being sentenced to additional time in prison."

Petitioner made these same arguments concerning trial court error for admitting copies rather than certified copies in claim nine.  And, as in claim nine, Petitioner does not contend that the copies were inaccurate.  Apparently his argument is that had trial counsel objected to the use of copies, and had the state thereafter not furnished certified copies, and had the court not granted a continuance to obtain certified copies, then perhaps Petitioner would not have been sentenced based on his extensive criminal history.  And, perhaps he would not have been habitualized.

First, this is mere speculation and conjecture.  Second, the government in its response argues that it is even factually untrue.  It points out that the convictions used to support the habitualization of the Petitioner were supported by certified copies at the sentencing hearing. This Court need not search the record to resolve the issue because Petitioner's trial counsel is neither deficient nor were his actions prejudicial.  As noted in claim nine, Petitioner's sentence was the result of his plea bargain - he had bargained for a specific "package to take

care of everything." (Exhibit 23, Vol. II, r. 201).

Petitioner's arguments in support of claim twelve fail both prongs of the <u>Strickland</u>

test and therefore must be denied.

## Claim Thirteen

**Defense counsel was ineffective at sentencing for failing to advise Petitioner as to the minimum penalty for the 1996 burglary with an assault offense.**

It appears that Petitioner's claim thirteen relates only to his lawyer's failure to advise

him of the <u>minimum</u> penalty for the 1996 burglary with an assault offense. His argument

begins with the statement that he was advised of neither the minimum nor the maximum as

to the 1995 possession of a firearm by a convicted felon offense and the 1996 burglary with

an assault offense. Then Petitioner seems to acknowledge that at the change in plea hearing,

the transcript reveals that he was advised about everything except the minimum penalty for

the 1996 burglary with an assault offense. His argument states:

> Defense counsel failed to advise Petitioner as to the maximum and minimum penalties for entering pleas to the 1995 Possession of a Firearm by a Convicted Felon offense and the 1996 Burglary with an Assault offense. A review of the change in plea transcript reveals that Petitioner was advised by defense counsel or the trial court as to the maximum and minimum guideline penalties for the 1995 Possession of a Firearm by a Convicted Felon but only the maximum penalty for the 1996 Burglary with an Assault offense. The transcript is silent on whether Petitioner received any information from defense counsel or the trial court regarding the minimum penalty for the 1996 Burglary with an Assault offense. The transcript is also silent on whether the above maximum or minimums were discussed under a habitual felony offender classification. This is what Petitioner entered his plea as and was ultimately sentenced under.

This Court acknowledges that it may not understand Petitioner's claim or argument as to claim thirteen.  The argument recited above is the entire argument made by Petitioner on this issue, both in his original petition and in his reply brief.  There is not even an attempt to show how he was prejudiced by this failure, or failures, on the part of trial counsel.  The transcript reflects that both the judge and defense counsel discussed the maximum penalties for the crimes to which the Petitioner entered a plea and that defense counsel discussed the habitual sentence with Petitioner.  (Exhibit 23, Vol. I, r. 177-185).  As to the habitual sentence, Petitioner signed a written plea form indicating the enhanced sentence he would receive by accepting the offer and signing the form.  (Exhibit 23, Vol. 2, r. 277-278).

Since Petitioner was not prejudiced in any way, this claim fails the <u>Strickland</u> test and is denied.

### Claim Fourteen

**Defense counsel was ineffective at sentencing for failing to inform the Defendant that he must serve 85% of his imposed sentence for the 1996 convictions instead of 65% of his current sentence for the 1995 convictions.**

In support of claim fourteen, Petitioner argues that his counsel was ineffective for failing to tell him exactly how much time he would spend in prison for each imposed sentence.  Petitioner points to no authority supporting the proposition that a trial lawyer must tell, or even could tell, a defendant how much time he would spend in prison.  Had Petitioner been told how much time he would spend in prison in this case, he would not have been able to rely upon it and was so advised by the sentencing court.

It is clear from the transcript that the Defendant understood exactly what the sentence was going to be and that no one had made any representations or promises as to how much time he would actually spend in prison.  The record of the change of plea hearing (Exhibit 23, Vol. 2, r. 167 *et seq.*) indicates Petitioner was told the following:

(at p. 177)

Mr. Pope (Petitioner's attorney):
        Let me make the record perfectly clear, Judge.  I don't believe the court could -
        - I trust the court could not expand beyond the forty years you offered him,
        which you kept open until this morning, even on all charges.

The Court:     Is he accepting that?

Mr. Pope:     And not as a violent but as a habitual.

The Court:     Is he accepting that offer on all charges?

Mr. Pope:     I need to talk with him for a couple minutes about that.

. . .

(pp. 178-179)

Mr. Pope:     Your Honor, Mr. Dunsizer has agreed to accept the Court's offer of a forty-year sentence as a habitual on the three charges for which he was convicted, in addition to that, the felon in possession of a firearm for which he would enter a plea of guilty, and the burglary assault and the burglary charge, which is 96-10820-CF, for which he would also enter a plea.

. . .

(p. 180)

The Court:     If Mr. Dunsizer wishes to enter a plea on the burglary charges that are set for trial today, the sentence I will impose on the life felony would be forty years concurrent and the thirty years concurrent on the other one.

Mr. Johnson (calculating guidelines):

    And I assume that the shooting into a building would be thirty, and the Ag Assault would be ten and the Felon in Possession would be twenty, all concurrent.

The Court:    That is correct.  All concurrent.

Mr. Johnson:    In answer to your other question, we spent a lot of time, but I did not at that time go over a plea form.

The Court:    Let's do that now.

        . . .

(pp. 180-187)

The Court:    Okay.  All right.  Mr. Johnson and Mr. Pope, now have we had a chance to go over a change of plea form on the burglary charge and on the felon in possession charge with Mr. Dunsizer?

Mr. Johnson:    Yes, Your Honor.

        . . .

The Court:    Mr. Dunsizer, on the two burglaries and the felon in possession you have had an opportunity to go over the change of plea forms with your attorneys; is that correct?

The Defendant:    Yes.

The Court:    And you understand what is in them?

The Defendant:    Yes.

The Court:    You understand by entering a change of plea on those charges that you are giving up your right to have a jury trial on those matters and giving up your right to contest the facts in those cases.  Do you understand that?

The Defendant:    Yes.

The Court:    Is anybody forcing you to enter a change of plea today?

The Defendant:      No.

The Court:      This is what you want to do in order to get these cases over with; is that correct?

The Defendant:      Yes.

The Court:      Are you currently under the care of a doctor or taking any type of medicine or medication?

The Defendant:      No.

The Court:      Are you currently under the influence of an alcoholic beverage or any other mind-altering substance?

The Defendant:      No.

The Court:      You understand on these cases you are entering a change of plea and that you are going to be sentenced as a habitual offender and as such, might not get all the good and gain time that an ordinary convict might receive.  Do you understand that?

The Defendant:      Yes.

The Court:      Has Mr. Love, Mr. Johnson, or anybody else made you any promises or representations as to how much time you're actually going to be spending in prison?

The Defendant:      No.

The Court:      Okay.  And you fully understand what is going on here this morning?

The Defendant:      Yes.  I guess so.

The Court:      I'll find that Douglas H. Dunsizer is alert and intelligent and understands what is going on here; that he has freely and voluntarily agreed to change his plea on the two burglaries and a felon in possession.  Nobody is forcing him to do this.

He understands the maximum of life imprisonment that he could receive on the burglary charge.  He understands the actual sentence he is going to get.

Page 32 of  35

I will accept his change of plea, adjudicate that he is guilty of those three charges.

And I previously found that he is guilty on the three counts that he went to trial on and was found guilty on. I adjudicated him not guilty previously on the tampering charge.

On case number 95-13533, count one, the attempted murder charge, I will impose a sentence of 40 years in the Department of Corrections and as a career criminal. Timeframe here on the life felony, that has to be guidelines, does it not?

Mr. Mooney:      Mr. Davidson and I found a case that would seem to indicate that the Court could sentence him as a career criminal. They are talking about the first PBL statute. And basically the Florida Supreme Court is saying, well, because the argument was made because you couldn't do that because that wasn't one of the ones that was classified as one of those first seconds or thirds, that you could enhance. They said no first PBL for all intents is the same as a first, and you can enhance on that.

Be that as it may, I think the Court is safer to sentence him pursuant to the guidelines under 40 and habitual on the other one.

The Court:      I would impose a 40-year sentence under the sentencing guidelines and also impose a three-year minimum mandatory sentence along with that.

On count three, the shooting into a building, I will impose a 30-year sentence as a career criminal.

On count five, the aggravated assault, I will impose a 10-year sentence with a three-year minimum mandatory as a career criminal.

He has entered a plea now on count two, the felon in possession. I'll impose a 30-year sentence on that as a career criminal.

On case 96-10820 on count one I will impose – adjudicate Mr. Dunsizer guilty and sentence him to 40 years as a career criminal. On count two I will find him guilty and sentence him to 30 years as a career criminal. All sentences running concurrent one with the other.

Mr. Mooney:      Same thing with the mandatory three.

The Court:    Yes. The two minimum mandatories for the use of firearm on counts one and five will likewise run concurrent.

At the change of plea hearing, the trial court made findings of fact that the Defendant understood the plea agreement, he specifically agreed with the sentences he was to be given, and he stated that no one had made any representations to him as to the amount of time that he would actually spend in prison. This Court is bound by the factual findings of the state court unless overcome by Petitioner by clear and convincing evidence. Petitioner failed to meet this burden.

For all the reasons set forth herein, claim fourteen is denied.

## Claim Fifteen

**Defense counsel was ineffective at trial for not pursuing an alibi defense.**

In support of claim fifteen, Petitioner argues that a potential witness, John Tourney, could have provided an alibi for the Petitioner. Interestingly, he does not describe what information Mr. Tourney had or even what his "alibi" would have been. The Court fails to understand how an alibi would have been effective in this case since Dunsizer was only out of the sight of the eyewitnesses inside the bar for two minutes. Several witnesses saw him run into the bar demanding his gun, jump into the back of his truck to get his gun, jump out and run north in the direction in which Mr. Adams had just gone. The door to the bar then shut, the witnesses heard a shot, and Dunsizer was back inside the bar all within two minutes. The Court questions whether this alibi claim is even made in good faith.

Be that as it may, an evidentiary hearing was held on this issue by the state trial court judge and Petitioner's three defense attorneys testified at the hearing. The trial court made a finding of fact that their decision to argue intoxication rather than pursue an alibi defense, which they did not think would be successful, was a strategy decision. Second guessing strategy decisions do not pass the <u>Strickland</u> test. <u>Strickland</u>, 466 U.S. at 699.

Since this argument fails the <u>Strickland</u> test, it is denied.

## **CONCLUSION**

Having addressed each of the fifteen claims raised by Petitioner and finding that each has no merit, the Court determines that the Petition should be denied. It is therefore

ORDERED AND ADJUDGED that:

1.      The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2.      The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

**DONE** and **ORDERED** in Tampa, Florida on March 2, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>**Copies Furnished To**</u>:
Counsel/Parties of Record

*F:\Docs\2004\04-cv-99.habeas order.wpd*